## Oakford *v.* Nirdlinger.

*Landlord and tenant—Lease of wall for advertising purposes—Holding over.*

In an action to recover rent for several years in arrears under the lease of a wall for advertising purposes, the case is for the jury where the evidence shows that the view of the wall from the street had been obstructed by a structure on neighboring property, that the lessees had given notice of an intention to quit if the obstructions were not removed, that the obstructions were not removed, that the lessee ceased using the wall shortly thereafter, and that the lessors accepted compensation for the use of the place from other parties. In such a case a verdict and judgment against the plaintiff's claim will be sustained.

Argued May 9, 1900. Appeal, No. 422, Jan. T., 1899, by plaintiff, from judgment of ·C. P. No. 4, Phila. Co., June T., 1898, No. 1016, on verdict for plaintiff, in case of William H. Oakford, agent for F. A. Oakford and F. A. Oakford, v. Samuel F. Nirdlinger, otherwise known as Samuel F. Nixon, and J. Frederick Zimmerman, copartners, trading as Nixon & Zimmerman. Before GREEN, C. J., McCOLLUM, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Assumpsit to recover rent.   Before ARNOLD, P. J.

The court charged as follows :

The plaintiff claims six years' rent and more, at $40.00 a . month, under an agreement made in November, 1891, for the use of the roof and south wall of a building, No. 29 South Ninth street, in the city of Philadelphia, for the purpose of displaying stereopticon views, advertising and posting theatrical and other bills on the southern side of said roof and wall only, together with access to the roof through the premises between the hours of 6 o'clock A. M. and 6 o'clock P. M., during the term of nine months ending on August 15, 1892. And then it provides that the lessee agrees that all goods on the premises shall be liable for distraint for rent due, and it was agreed that if the said lessee shall continue in the occupancy of the said premises after the expiration of the said term, then the lease shall continue upon the same terms and conditions as are therein contained for a further period of one year, and so on from year to year until terminated by either party thereto giving to the other thirty days' notice for removal previous to the expiration of the then current term. Now it is admitted that for the first nine months the American Bill Posting Company, the lessee under this contract, paid the rent. It also paid the first month's rent of the second year, beginning August 15, 1892. But before September 15, 1892, the defense alleges that the owner of the adjoining property on the south, which was one story lower than the property of Mr. Oakford, leased a similar privilege to the American Exhibition Company, which company put up a frame of galvanized iron, stanchioning it by iron guy wires to the wall that was leased to the American Bill Posting Company, and that it thereby obscured the wall that was leased to the American Bill Posting Company. That is to say, the tenants of the adjoining property on the south, by leasing similar privileges to the American Exhibition Company, obscured the wall that was leased to the American Bill Posting Company. And Mr. Robinson, the person who signed this agreement for the bill posting company, said he called on Mr. Oakford in the month of September, 1892, and told him that unless that obstruction was removed they would vacate the premises. Mr. Robinson said it

was not removed, and they never did use the south wall or the roof of Mr. Oakford's house after September 15, 1892. Now, at one time I thought this was a mere contract for the use of the wall, and if the bill posting company could not get the use of the wall for stereopticon purposes and posting theatrical devices, it was not liable to pay the rent. But the Supreme Court overruled me on that point, and said the agreement was a lease, and inasmuch as the American Bill Posting Company had paid the rent for the first month of the second year, they were in for that year. And I am bound to instruct you that the plaintiff in this case is entitled to recover the rent for that second year; that is, the remainder of it that has not been paid. [It is admitted that four months' rent of the · second year has been paid; one month by the American Bill Posting Company, and three months by the defendants here, Nixon & Zimmerman—and eight months of that second years' rent is still unpaid and due. Therefore there seems to be no escape for the defendant from the payment of those eight months' rent. But are the defendants, as surety for the American Bill Posting Company, or is the American Bill Posting Company liable for any rent after September 15, 1893, the end of the second year. For, as told you before, the plaintiff in this case claims six years' rent, payable monthly at $40.00 each month, amounting to $2,760, for the use of the wall which is obscured, according to the testimony here, by another frame work of an opposition company. That is the quesiton for you to determine. And it depends upon this, did they continue upon the premises and remain in possession? If they did then they are liable. If they continued on the premises after the expiration of the second year they are liable for another year's rent, and so on, so long as they continued in possession, unless they removed from the premises. Mr. Robinson testified—and you can say if you believe him—that he told Mr. Oakford in September, 1892, that they would vacate if the obstruction remained there, and he also said that from September 15, 1892, the American Bill Posting Company never used the roof or south wall that Mr. Oakford leased, because the other company's frame work obstructed the view of it. The question is whether the American Bill Posting Company did continue in possession after September 15, 1893, in order

to determine whether it shall be compelled to pay the full amount claimed, $2,760, for the south wall and the roof of that building. If you believe they did not continue on the premises and did not use the wall and roof they are not liable beyond the second year. That is all there is in this case.] ]4]

Verdict and judgment for plaintiff for $435.68. Plaintiff appealed.

*Error assigned* among others was (4) portion of the charge as above, quoting it.

*Avery D. Harrington*, with him *J. Alfred Smith*, for appellants.—Under the circumstances, it is submitted that an absolute and positive notice to quit on August 15, 1893, would not have relieved the lessee from the payment of rent, unless the property of the lessee was removed and possession given in accordance with such notice. The plaintiff was, therefore, at liberty to treat the lessee as a trespasser or as a tenant for another year, and so on from year to year until formal notice was given and a removal of the property and surrender of possession in accordance with such notice : Dorr v. Barney, 12 Hun (N. Y.), 259.

*George S. Graham*, with him *Joseph Gilfillan* for appellee.— The question of abandonment and acceptance is one for the jury : Bartley v. Phillips, 165 Pa. 325.

A tenancy from year to year after the termination of the term is determinable at the pleasure of either the lessee or owner of the reversion, upon giving the requisite notice : Doe v. Browne, 8 East, 165 ; Western Transportation Co. v. Lansing, 49 N. Y. 499 ; Jones v. Shears, 4 Ad. & Ellis, 832 ; Phœnixville Borough v. Walters, 147 Pa. 501 ; Wilcox v. Montour Iron & Steel Co., 147 Pa. 541.

PER CURIAM, May 23, 1900:

The learned court below charged the jury that the defendants were liable to pay the unpaid remainder of the second year's rent, and for that amount a verdict was rendered. As to the rest of the plaintiff's claim founded upon a holding over without

notice for several successive years, the court told the jury that the question for them was whether the defendants continued upon the premises and remained in possession after the expiration of the second year, adding that if they did they were liable, and if they did not they were not liable. There was evidence upon this subject sufficient, as we think, to carry the question to the jury, and the jury has found upon all the testimony, that the lessees did not remain in possession after the end of the second year. We do not see any error in the submission of this question and we are therefore of opinion that the judgment should be affirmed. There was quite considerable testimony given showing notice of the intention to quit by the lessee if certain obstructions to the use of the sign were not removed, and that they were not removed, also to the effect that the lessee ceased using the place after September 15, 1892, and also that the lessors accepted compensation for the use of the place from other parties. The effect of all this testimony was for the jury. The assignments of error are dismissed.

Judgment affirmed.